IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FLORIDA BARRIOS, for herself
and on behalf of her Minor child K.B.,

                 Plaintiffs,

v.

BEAVERTON SCHOOL DISTRICT,
JARED FREEMAN, in his individual and
representative capacity, ELIZABETH
WILLIAMS, in her individual and
representative capacity, John and Jane Doe,
1-15,

                 Defendants.

No. 3:24-cv-01872-HZ

OPINION & ORDER

Robert Roosevelt Parker, Jr
Law Office of Robert R. Parker Jr LLB LLC
111 S.W. Fifth Avenue
Suite 3150
Portland, OR 97204

       Attorney for Plaintiffs

Michael Porter
MILLER NASH LLP
1140 S.W. Washington Street
Suite 700
Portland, OR 97205

Michael Zangl
MILLER NASH LLP
605 Fifth Avenue S
Suite 900 Seattle, WA 98104

       Attorneys for Defendants

HERNÁNDEZ, Senior Judge:

This matter comes before the Court on Defendants' Motion to Dismiss, ECF 9. For the reasons that follow, the Court grants Defendants' Motion with leave to amend as set out in this Opinion and Order.

## BACKGROUND

The following facts are taken from Plaintiffs' Complaint and the parties' filings related to Defendants' Motion to Dismiss.

On October 4, 2023, Plaintiff K.B. was in the cafeteria/lunchroom of Conestoga Middle School when Defendant Elizabeth Williams, a school counselor, brought K.B. to "the office." Compl., ECF 1, Ex. A, ¶ 11. Williams "closed the office door and pulled the shade." Williams directed K.B. to power down his cell phone and "began berating [K.B.], calling him names and insinuating rude, snide and demeaning comments that were derogatory, intimidating, insulting and humiliating," including "references to the race and ethic background of [K.B.] who is of Hispanic/Mexican ancestry." *Id*. ¶¶ 11-12. Williams was "shaking, crying and screaming at" K.B. and making "impermissible and derogatory statements and comparisons between [K.B.] and African Americans whom she referred to as the 'N' word." *Id.* ¶ 13. The encounter "continued for an extended period of time" during which Williams "continued to berate [K.B.] with a continued barrage of derogatory, racist and humiliating assertions through the barbs that she repeatedly lobbed at" him. *Id.* ¶ 14. At some point Williams, allegedly discussing K.B.'s mother, stated "did you know that I have been working over 20-25 f*@*ing years for you colored people and that's how you pay me?" *Id*. ¶ 19. Williams "got very close to [K.B.'s] face" and said, "I should slap your face right now, would you like it, would you like it?" *Id*. ¶ 20. Eventually Williams "released [K.B.] to another school employee . . . to escort [K.B.] to his

class." *Id.* ¶ 16. Later Williams sent an email to K.B.'s "teachers, counselors, and the principal to let everyone know what kind of child K.B. is so that they [could] chew [him] up and spit at [his] face to [he] [*sic*] learn[ed] [his] lesson." *Id.* ¶ 22.

When K.B. came home from school and informed his mother, Plaintiff Florida Barrios, what happened, Barrios "called the school and also went to the school where she was essentially barred from entry ostensibly due to alleged threats that were said to have been directed to Ms. Williams. [Barrios] asserted how she felt but took no action to bring such 'feelings' into realization." *Id.* ¶ 24.

On October 20, 2023, Plaintiffs' counsel, Robert R. Parker, Jr., sent a letter to Defendant Jared Freeman, Principal of Conestoga Middle School, in which he advised that he had been retained to represent Plaintiffs, noted Plaintiffs' "concern regarding [unspecified] retaliatory measures being used against them," and requested that if any retaliatory conduct was occurring, it cease immediately. Compl. p. 18.

On November 8, 2023, general counsel for Defendant Beaverton School District ("BSD") sent Parker a letter acknowledging receipt of his October 20, 2023 letter; enclosing various documents; describing several witness's accounts of Barrios's behavior at Conestoga Middle School that caused Freeman to call "public safety and non-emergency"; attaching a "modified trespass warning that [would] allow [Barrios] to access the school on a limited basis"; and noting BSD had taken "appropriate disciplinary actions" against Williams. *Id.* pp. 20-21.

On October 15, 2024, Plaintiffs filed a Complaint in Washington County Circuit Court against BSD, Freeman, Williams, and Does 1-15 asserting claims for violation of Oregon Revised Statutes §§ 659.850 and 659.852; intentional infliction of emotional distress ("IIED"); violation of 42 U.S.C. § 1981; violation of 42 U.S.C. § 1983; negligence; false imprisonment;

and assault and battery. On November 12, 2024, Defendants removed the matter to this Court on the basis of federal-question jurisdiction.

On December 20, 2024, Defendants filed a Motion to Dismiss. The Court took the matter under advisement on January 26, 2025.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "When reviewing a dismissal pursuant to Rule 12(b)(6), the Court accepts as true all facts alleged in the complaint and construes them "in the light most favorable to plaintiff." *Pino v. Cardone Cap., LLC,* 55 F.4th 1253, 1257 (9th Cir. 2022)(quotation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(citations and footnote omitted). "'Threadbare recitals of the elements of a cause of action" do not suffice to state a claim." *Pino*, 55 F.4th at 1257 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678. A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

**DISCUSSION**

Defendants move to dismiss Plaintiffs' claims for violation of Or. Rev. Stat. §§ 659.850

and 659.852 and 42 U.S.C. § 1981 in their entirety and to dismiss Plaintiffs' claims for IIED,

violation of § 1983, and negligence as to Barrios.

**I.    Violation of Or. Rev. Stat. § 659.850**

Defendants move to dismiss Plaintiff's claim for violation of § 659.850 on the basis that

Plaintiffs failed to file a grievance before bringing this claim. Plaintiffs assert in their Response

that "the meeting that Plaintiff requested which was held with the General Counsel for Defendant

BSD, defendant Freeman and Plaintiff's counsel should be construed as a formal grievance," and

if not, Plaintiffs request leave to amend their Complaint to include allegations "of any grievance

filed or to provide additional context for the claim." Pls.' Resp., ECF 10, p. 2.

Or. Rev. Stat. § 659.850(2) prohibits "discrimination in any public . . . secondary . . .

education program or service." Or. Rev. Stat. § 659.850(1)(a)(A) defines discrimination as: "any

act that unreasonably differentiates treatment, intended or unintended, or any act that is fair in

form but discriminatory in operation, either of which is based on race, color, religion, sex, sexual

orientation, gender identity, national origin, marital status, age or disability." Although Oregon

statutes provide a private right of action for "[a]ny person claiming to be aggrieved by unlawful

discrimination as prohibited by ORS 659.850," they also provide that "[a]n action may not be

filed unless, within 180 days of the alleged discrimination, a grievance has been filed with the

school district board." Or. Rev. Stat. § 659.860(1) and (3). *See also Camarata v. Portland Cmty.

Coll.*, No. 3:19-CV-00738-HZ, 2019 WL 4723769, at *4 (D. Or. Sept. 26, 2019)(dismissing the

plaintiff's claim for violation of Or. Rev. Stat. § 659.850 because there was "no allegation . . . a

grievance [required by § 659.860(3)] was filed.").

Plaintiffs do not allege that they filed a grievance with the school district board. Instead, Plaintiffs assert that a meeting held "with the General Counsel for Defendant BSD, defendant Freeman and Plaintiff's counsel should be construed as a formal grievance." The language of § 659.860(3) is clear and unambiguous: an individual may not file an action unless he has filed a grievance with the school district board. Plaintiffs do not cite any case[1] in support of their assertion that a meeting may be construed as a grievance nor could the Court find any authority that suggests such a meeting would satisfy the requirements of § 659.860(3). The Court, therefore, declines to construe a meeting between general counsel, Freeman, and Plaintiffs' counsel as filing a grievance under § 659.860(3). Accordingly, the Court grants Defendants' Motion to Dismiss this claim.

The Court grants Plaintiffs leave to amend this claim to the extent that they can allege they filed a grievance with the BSD board within 180 days of the alleged discrimination.

## II.    Violation of Or. Rev. Stat. § 659.852

In the second claim Plaintiffs allege K.B. was "subjected to threats, harassment or other adverse action that resulted in . . . K.B., being substantially disadvantaged in his academic and/or extracurricular activities because [he] reported, in good faith, information that [he] believed was a violation of state or federal law, rule or regulation" and Defendants "by virtue of the conduct complained of herein engaged in unlawful retaliation against [K.B.] in violation of ORS 659.852." Compl. ¶¶ 32-33.

Or. Rev. Stat. § 659.852(2) provides: "A student of an education program may not be subjected to retaliation by an education program for the reason that the student has in good faith

---

[1] Plaintiffs' cite *Gibson v. West-Linn-Wilsonville Sch. Dist.*, 152 Or. App. 116, 952 P.2d 66 (1998) in support of their assertion, but neither defense counsel nor the Court are able to locate this case in either reporter cited or by case name.

reported information that the student believes is evidence of a violation of a state or federal law, rule or regulation." § 659.852(1)(b) defines retaliation as "suspension, expulsion, disenrollment, grade reduction, denial of academic or employment opportunities, exclusion from academic or extracurricular activities, denial of access to transcripts, threats, harassment or other adverse action that substantially disadvantages a student in academic, employment or extracurricular activities."

Defendants move to dismiss this claim on the basis that Plaintiffs have not alleged retaliation after K.B.'s interaction with Williams. Plaintiffs allege K.B. was subjected to harassment, threats, and discrimination while he was in Williams's office, but there are no allegations in the Complaint that Defendants took any actions defined as retaliation after the incident or after Barrios raised concerns about the incident. Plaintiffs respond that the Complaint "provides specific instances of harassment and threats made by" Williams, but request leave to amend "to provide more specificity to their allegations of retaliatory actions taken by Defendants." Pls. Resp. p. 3.

The Court finds that Plaintiffs have not made any allegations of retaliatory actions taken by Defendants after Barrios "called the school and also went to the school" to complain about Williams's behavior. Plaintiffs, therefore, have not stated a claim for violation of Or. Rev. Stat. § 659.852. Accordingly, the Court grants Defendants' Motion to Dismiss this claim.

The Court grants Plaintiffs leave to amend to the extent that they can allege retaliatory actions as defined in Or. Rev. Stat. § 659.852(1)(b) taken by Defendants after Barrios "called the school and also went to the school" to complain about Williams's actions.

### III.    IIED

In their third claim Plaintiffs allege that "the conduct complained of herein by defendant Williams, Freeman and BSD engaged in intentional and/or reckless misconduct, [*sic*] that was extreme and outrageous . . ., that was the proximate cause and result of the severe emotional mental anguish and/or distress that [Barrios and K.B.] sustained." Compl. ¶ 34. Plaintiffs allege K.B. and Barrios "have suffered under the intentionally and/or recklessly imposed misconduct that the defendants put in motion and both [Barrios and K.B.] . . . continue to suffer the ill-effects of said recklessly and/or intentionally imposed misconduct that defendants engaged or otherwise participated in the implementation of." *Id.* ¶ 35.

Defendants move to dismiss Plaintiffs' IIED claim as to Barrios on the basis that Plaintiffs have not alleged facts sufficient to state a claim. Plaintiffs state in their response that Barrios "was subjected to extreme and outrageous conduct by Defendants causing severe emotional distress. The complaint describes how [she] was barred from the school and received a letter from Defendant Freeman, which exacerbated her distress." Pls. Resp. p. 3.

To state a claim for IIED, a plaintiff must allege the defendants intended to inflict severe emotional distress, the defendants' acts were the cause of the plaintiff's severe emotional distress, and the defendants' acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. *Cider Riot, LLC v. Patriot Prayer USA, LLC*, 330 Or. App. 354, 382 (2024)(quotation omitted). "Whether conduct constitutes an extraordinary transgression of the bounds of socially tolerable conduct is a question of law." *Harris v. Pameco Corp.*, 170 Or. App. 164, 171 (2000). *See also House v. Hicks*, 218 Or. App. 348, 358 (2008)(The "trial court plays a gatekeeper role in evaluating the viability of an IIED claim by assessing the allegedly tortious conduct to determine whether it goes beyond the farthest reaches of socially tolerable behavior

and creates a jury question on liability."). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *House,* 218 Or. App. at 358 (quotation omitted). "Conduct that is rude, boorish, tyrannical, churlish and mean" does not support liability for IIED. *Schoen v. Freightliner LLC*, 224 Or. App. 613, 627 (2008)(quotation omitted). "[I]t is the defendant's specific acts, rather than their motives, that must be outrageous." *Cisneros v. City of Klamath Falls*, 604 F. Supp. 3d 1114, 1128 (D. Or. 2022)(citing *Madani v. Kendall Ford, Inc.,* 312 Or. 198, 204 (1991), *abrogated on other grounds by McGanty v. Staudenraus,* 321 Or. 532, 543 (1995)).

The only actions that Plaintiffs allege Defendants engaged in as to Barrios were (1) answering her phone call to the office, (2) "essentially barr[ing] her from the school" on the grounds that Freeman was concerned for Williams's safety, and (3) sending a letter to Plaintiffs' counsel in response to this tort claims notice. Oregon courts have found similar actions are not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." For example, in *House*, the court found that the plaintiff failed to state a claim for IIED because the "university's conduct in excluding plaintiff from the campus [for 18 months] and enforcing that ban was neither outrageous nor extreme" when the university's department of public safety had received reports that the plaintiff was making unwanted contact with a university employee and causing her to feel concerned for her safety. 218 Or. App. at 351-356, 366. The Court concludes Plaintiffs have not alleged facts sufficient to state a claim for IIED as to Barrios. Accordingly, the Court grants Defendants' Motion to Dismiss this claim.

In their Response Plaintiffs request leave to amend the Complaint to "include additional facts that may support this claim." Pls. Resp. p. 3. The Court grants Plaintiffs leave to amend the Complaint to add facts to support Barrios's claim.

**IV.    Section 1981**

In their fourth claim Plaintiffs allege Defendants violated 42 U.S.C. § 1981 when they "pulled [K.B.] out of his lunchroom activities where he was sitting with other students, all of whom were Caucasian lineage, taken [*sic*] [him] to an isolated room where he was locked in and unable to remove himself and subjected [him] to a barrage of racially infused threats and other forms of harassment." Compl. ¶ 38. Defendants move to dismiss this claim on the grounds that § 1983 is the exclusive remedy for violations of § 1981 by state actors and to the extent that Plaintiffs intend to bring their claim against Freeman and Williams in their individual capacities, the Complaint does not and cannot allege there was a contract between the individual defendants and Plaintiffs. *See Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 733 (1989)("the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units"); *Domino's Pizza, Inc. v. McDonald,* 546 US 470, 475-76 (2006)("§ 1981 . . . protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race. . . . Any claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights.").

In their Response Plaintiffs agree § 1983 is the exclusive remedy for violations of § 1981 by state actors. Plaintiffs also concede Defendants' Motion to Dismiss their § 1981 claim to the extent that it "cannot be made applicable to" Freeman and Williams in their individual capacities and request leave to amend the Complaint to reframe the claim under § 1983 as to BSD.

The Court grants Defendants' Motion to Dismiss the § 1981 claim with prejudice. The Court grants Plaintiffs leave to amend the Complaint to reframe their § 1981 claim against BSD under § 1983.

## V.    Section 1983

In their fifth claim Plaintiffs allege Defendants violated § 1983 when they "deprived [Barrios] and . . . K.B. (who is a member of a protected class) of rights, privileges and immunities that are protected under the Constitution and law of the United States of America." Compl. ¶ 40. Defendants move to dismiss Plaintiffs' § 1983 claim as to Barrios because Plaintiffs do not allege facts sufficient to establish a violation of Barrios's constitutional rights. Plaintiffs assert in their Response that they have alleged sufficient facts by detailing "how Barrios was barred from the school and received a letter from Defendant Freeman, which she contends was discriminatory," but also request leave to amend their Complaint to "provide more detailed allegations of constitutional violations." Pls. Resp. p. 4.

"To state a claim under § 1983, a plaintiff must allege (1) the 'violation of a right secured by the Constitution and laws of the United States' and (2) that 'the alleged deprivation was committed by a person acting under color of state law.'" *Pruitt v. Bobbala*, No. 23-15732, 2024 WL 3631154, at *2 (9th Cir. Aug. 2, 2024)(quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). Plaintiffs cite no authority for their assertion that the November 2023 letter violated any constitutional right of Barrios nor any authority that "barr[ing] Barrios from the school" due to concerns for Williams' safety alleges a violation of Barrios's constitutional rights.

In their Response, Plaintiffs cite *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). To establish a claim for *Monell* liability a plaintiff must prove (1) she was deprived of a constitutional right; (2) the municipality had a policy, longstanding

practice, or custom; (3) the policy, practice, or custom amounted to "deliberate indifference to the plaintiff's constitutional right"; and (4) the policy, practice, or custom was "the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). Plaintiffs have not alleged any policy, custom, or longstanding practice. In addition, a *Monell* claim may be asserted only against a public body, not individual officers. *See Monell, 436 U.S. at 691-94* (§ 1983 liability of a local governing body arises only when "action pursuant to official . . . policy of some nature caused a constitutional tort" and not on the basis of respondeat superior). Accordingly, to the extent that Plaintiffs intend to assert a *Monell* claim, that claim may not be asserted against Freeman or Williams.

The Court finds Plaintiffs have not alleged facts sufficient to establish a claim for violation of § 1983 as to Barrios. The Court, therefore, grants Defendants' Motion to Dismiss this claim as to Barrios. The Court grants Plaintiffs leave to amend the Complaint to add facts to support Barrios's claim.

## VI.    Negligence

In their sixth claim Plaintiffs allege "Defendants had a duty to provide a safe, secure environment for providing educational services to" K.B. and they "breached their duty by . . . allowing . . . Williams to impermissibly subject" K.B. "to discriminatory actions based on his race and Mexican origin." Compl. ¶¶ 41-42. Barrios and K.B. "sustained damage resulting directly from the impermissible misconduct of the defendants" and "[t]hat . . . impermissible misconduct of defendants Freeman and Williams and the ratification of same by defendant BSD is the proximate cause of the damages sustained by" Barrios and K.B. Compl. ¶¶ 43-44.

Defendants move to dismiss this claim as to Barrios because plaintiffs may not recover emotional distress damages caused by negligence absent physical injury except in limited

circumstances and Plaintiffs have alleged neither that Barrios suffered any physical injury nor any of the circumstances in which Oregon courts have concluded plaintiffs may bring a negligence claim absent physical injury. Plaintiffs request leave to amend the Complaint to include "additional facts or legal theories that may support this claim." Pls. Resp. p. 5.

To state a claim for negligence a plaintiff must allege

> facts from which a factfinder could determine (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.

*Moody v. Or. Cmty. Credit Union*, 371 Or. 772, 784 (2023)(quotation omitted). Under Oregon law, however, individuals "[g]enerally . . . do not have a legally protected interest in being free from emotional distress." *Id.*

> [T]o date, [the Oregon Supreme Court] has permitted common-law tort claims for emotional distress damages only in the following three circumstances: (1) when the defendant also physically injures the plaintiff; (2) when the defendant intentionally causes the emotional distress; or (3) when the defendant negligently causes foreseeable, serious emotional distress *and also* infringes some other legally protected interest.

*Id.* (quotation omitted)(emphasis added). In the third category, which is at issue here, the Court has held that "the injury's foreseeability, standing alone, is insufficient to establish the defendant's liability[;] there must also be another 'legal source' of liability for the plaintiff to recover emotional distress damages." *Id.* (quoting *Philibert v. Kluser*, 360 Or. 698, 703 (2016)). In *Philibert* the court evaluated "whether two brothers who had watched their third brother die in a collision had stated a negligence claim for the emotional distress damages that they had alleged." *Id.* at 785. The Court concluded that "bystander emotional injury claims" may be permitted only when "(1) the bystander perceives the event contemporaneously and (2) is a close

family member of the person suffering the bodily injury." *Id.* at 787 (citing *Philibert*, 360 Or. at 711).

Plaintiffs have not alleged any legally protected interest of Barrios that was infringed by Defendants' interactions with K.B. or Barrios. In their Response Plaintiffs cite *Fazzolari v. Portland School District* No. 1J, 303 Or 1 (1987), but that case discussed the "special duty arising from the relationship between educators and children entrusted to their care apart from any general responsibility not unreasonably to expose people to a foreseeable risk of harm." *Id.* at 19. The Court did not develop or suggest any special duty or relationship between educators and parents. Plaintiffs also cite *Curtis v. MRI Imaging Services II*, 327 Or 9 (1998), that case, however, involved a "claim . . . that a medical practitioner breached a professional duty to guard against a specified medical harm." *Id.* at 15. The Court concluded that under those circumstances "the fact that that harm is psychological rather than physical is not a bar to liability" for negligent infliction of emotional distress.

Plaintiffs do not allege facts sufficient for Barrios to recover as a bystander because she did not perceive the events with K.B. contemporaneously. Plaintiffs also do not identify a special relationship or duty between educators and parents or any authority that gives parents the right to recover for only emotional injury when their child has been discriminated against in school. The Court, therefore, concludes Plaintiffs have not stated a claim for negligence as to Barrios. Accordingly, the Court grants Defendants' Motion to Dismiss this claim as to Barrios. The Court grants Plaintiffs leave to amend the Complaint to add facts to support Barrios's negligence claim.

**CONCLUSION**

The Court GRANTS Defendants' Motion to Dismiss, ECF 9. The Court grants Plaintiffs

leave to file a second amended complaint curing the deficiencies set out in the Opinion and

Order no later than 30 days after entry of this Opinion and Order.

IT IS SO ORDERED.


DATED: __February 21, 2025_____.



_____
MARCO A. HERNÁNDEZ
United States Senior District Judge