IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FLORIDA BARRIOS, for herself
and on behalf of her Minor child K.B.,

                    Plaintiffs,

v.

BEAVERTON SCHOOL DISTRICT,
JARED FREEMAN, in his individual and
representative capacity, ELIZABETH
WILLIAMS, in her individual and
representative capacity, John and Jane Doe,
1-15,

                    Defendants.

No. 3:24-cv-01872-HZ

OPINION & ORDER


Robert Roosevelt Parker, Jr.
Law Office of Robert R. Parker Jr LLB LLC
111 S.W. Fifth Avenue
Suite 3150
Portland, OR 97204

        Attorney for Plaintiffs

Michael Porter
MILLER NASH LLP
1140 S.W. Washington Street
Suite 700
Portland, OR 97205

Michael Zangl
MILLER NASH LLP
605 Fifth Avenue S.
Suite 900 Seattle, WA 98104

        Attorneys for Defendants


1 – OPINION & ORDER

HERNÁNDEZ, Senior Judge:

This matter comes before the Court on Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, ECF 16. For the reasons that follow, the Court grants Defendants' Motion.

## BACKGROUND

The following facts are taken from Plaintiffs' Amended Complaint and Defendants' Motion to Dismiss.

On October 4, 2023, Plaintiff K.B. told his mother, Plaintiff Florida Barrios, that he "had been sitting with other students, all of whom were and are of Caucasian lineage and ancestry" when he was "led from the . . . cafeteria/lunchroom" of Conestoga Middle School by Defendant Elizabeth Williams, a school counselor. Pls. Am. Compl. ("FAC"), ECF 13, ¶ 10. Williams "closed the office door and pulled the shades" and "began berating [K.B.], calling him names and insinuating rude, snide and demeaning comments that were derogatory, intimidating, insulting and humiliating," including "references to the race and ethic background and lineage of [K.B.] who is of Hispanic/Mexican ancestry." *Id*. ¶¶ 11-12. Williams made "impermissible and derogatory statements and comparisons between [K.B.] and African Americans whom she referred to as the 'N' word." *Id*. ¶ 13. The encounter "continued for an extended period of time" during which Williams "continued to berate [K.B.] with a continued barrage of derogatory, racist and humiliating assertions through the barbs that she repeatedly lobbed at" him. *Id*. ¶ 14. Eventually Williams "released [K.B.] to another school employee to escort [K.B.] to his class." *Id*. ¶ 16.

When Barrios "became aware of the underlying facts and circumstances that had occurred" she "called the school and also went to the school where she was essentially barred from entry ostensibly due to alleged threats that were said to have been directed to Ms. Williams.

[Barrios] asserted how she felt but took no action to bring such 'feelings' into realization." *Id.* ¶ 17.

On October 20, 2023, Plaintiffs' counsel, Robert R. Parker, Jr., sent a letter to Defendant Jared Freeman, Principal of Conestoga Middle School, in which he advised that he had been retained to represent Plaintiffs, noted Plaintiffs' "concern regarding [unspecified] retaliatory measures being used against them," and requested that if any retaliatory conduct was occurring, it cease immediately. Notice of Removal, Ex. A (Compl.) at 18.

On November 8, 2023, general counsel for Defendant Beaverton School District ("BSD") sent Parker a letter acknowledging receipt of his October 20, 2023 letter; enclosing various documents; describing several witness's accounts of Barrios's behavior at Conestoga Middle School that caused Freeman to call "public safety and non-emergency"; attaching a "modified trespass warning that [would] allow [Barrios] to access the school on a limited basis"; and noting BSD had taken "appropriate disciplinary actions" against Williams. FAC, Ex. A, at 1-2.

On October 15, 2024, Plaintiffs filed a Complaint in Washington County Circuit Court against BSD, Freeman, Williams, and Does 1-15 asserting claims for violation of Oregon Revised Statutes §§ 659.850 and 659.852; intentional infliction of emotional distress ("IIED"); violation of 42 U.S.C. § 1981; violation of 42 U.S.C. § 1983; negligence; false imprisonment; and assault and battery. On November 12, 2024, Defendants removed the matter to this Court on the basis of federal-question jurisdiction.

On December 20, 2024, Defendants moved to dismiss Plaintiffs' claims for violation of Or. Rev. Stat. §§ 659.850 and 659.852 and 42 U.S.C. § 1981 in their entirety and to dismiss Plaintiffs' claims for IIED, violation of § 1983, and negligence as to Barrios.

On February 21, 2025, the Court issued an Opinion and Order in which it granted Defendants' Motion to Dismiss; dismissed Plaintiffs' § 1981 claim without leave to amend; dismissed Plaintiffs' claims for violation of Or. Rev. Stat. §§ 659.850 and 659.852 in their entirety with leave to amend; and dismissed Plaintiffs' claims for IIED, violation of § 1983, and negligence as to Barrios with leave to amend.

On March 19, 2025, Plaintiffs filed an Amended Complaint ("FAC") in which they assert claims against BSD, Freeman, and Williams for violation of 42 U.S.C. § 1983; violation of Or. Rev. Stat. §§ 659.850 and 659.852; IIED; negligence; and false imprisonment. On April 3, 2025, Defendants filed a Motion to Dismiss Plaintiffs' Amended Complaint. Plaintiffs did not file a response to Defendants' Motion and the Court took the matter under advisement on April 25, 2025.

**STANDARDS**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "When reviewing a dismissal pursuant to Rule 12(b)(6), the Court accepts as true all facts alleged in the complaint and construes them "in the light most favorable to plaintiff." *Pino v. Cardone Cap., LLC,* 55 F.4th 1253, 1257 (9th Cir. 2022)(quotation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(citations and footnote omitted). "'Threadbare recitals of the elements of a cause of action" do not suffice to state a claim." *Pino*, 55 F.4th at 1257 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678. A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

## DISCUSSION

Defendants move to dismiss Plaintiffs' claims for violation of Or. Rev. Stat. §§ 659.850 and 659.852 in their entirety and to dismiss Plaintiffs' claims for IIED, violation of § 1983, and negligence as to Barrios.

### I.    Violation of Or. Rev. Stat. § 659.850

In their initial Complaint Plaintiffs' claim for violation of § 659.850 alleged K.B. "was . . . a student in the Beaverton School District and . . . was subjected to treatment by an employee at [Conestoga] Middle School where [K.B.] was subjected to unreasonably different treatment that was impermissibly based upon the race, color, sex, national origin and/or his age." Compl. ¶ 31. Defendants moved to dismiss Plaintiffs' claim for violation of § 659.850 on the basis that Plaintiffs failed to file a grievance before bringing this claim. Plaintiffs asserted in their Response that "the meeting that Plaintiff requested which was held with the General Counsel for Defendant BSD, defendant Freeman and Plaintiff's counsel should be construed as a formal grievance," and if not, Plaintiffs request leave to amend their Complaint to include allegations "of any grievance filed or to provide additional context for the claim." Pls.' Resp., ECF 10, p. 2.

The Court found that pursuant to § 659.860(3) an individual may not file an action unless he has filed a grievance with the school district board and noted Plaintiffs cited no case in

support of their assertion that a meeting may be construed as a grievance nor could the Court find any authority that suggested such a meeting would satisfy the requirements of § 659.860(3). The Court, therefore, declined to construe a meeting between general counsel, Freeman, and Plaintiffs' counsel as filing a grievance under § 659.860(3). Accordingly, the Court granted Defendants' Motion to Dismiss and granted Plaintiffs leave to amend their claim to the extent that they could allege they filed a grievance with the BSD board within the meaning of § 659.860(3).

In their Amended Complaint Plaintiffs again allege K.B. "was . . . a student in the Beaverton School District . . . [and] . . . was subjected to treatment by an employee at [Conestoga] Middle School where [K.B.] was subjected to unreasonably different treatment that was impermissibly based upon the race, color, sex, national origin and/or his age." FAC ¶ 27. Plaintiffs do not add any facts that indicate Plaintiffs filed a grievance with the BSD board. Plaintiffs add only an allegation that "the meeting requested by Plaintiff and held with the General Counsel for Defendant BSD, Defendant Freeman, and Plaintiff's counsel should be construed as a formal grievance consistent with the provisions of ORS 659.860(3)." FAC ¶ 28. Defendants move to dismiss this claim on the basis that Plaintiffs fail to allege facts sufficient to demonstrate that they filed a grievance before bringing this claim as required by § 659.860(3). Plaintiffs, as noted, did not file a response to Defendants' Motion and, therefore, provide no authority to support their allegation that the meeting should be construed as a grievance.

Or. Rev. Stat. § 659.850(2) prohibits "discrimination in any public . . . secondary . . . education program or service." Or. Rev. Stat. § 659.850(1)(a)(A) defines discrimination as: "any act that unreasonably differentiates treatment, intended or unintended, or any act that is fair in form but discriminatory in operation, either of which is based on race, color, religion, sex, sexual

orientation, gender identity, national origin, marital status, age or disability." Although Oregon

statutes provide a private right of action for "[a]ny person claiming to be aggrieved by unlawful

discrimination as prohibited by ORS 659.850," they require that "[a]n action may not be filed

unless, within 180 days of the alleged discrimination, a grievance has been filed with the school

district board." Or. Rev. Stat. § 659.860(1) and (3).

     Oregon Administrative Rule 581-022-2370 sets out the requirements for school district

complaint procedures including the requirement that "[e]ach school district must establish a

process for the prompt resolution of a complaint by" a parent or student. OAR 581-022-2370(1).

This regulation requires the complaint procedures to meet several criteria including that they

must be available on the school district's website, impose a time limitation for filing a complaint,

and "[i]nclude more than one but no more than four steps for addressing the complaint." OAR

581-022-2370(2)(a), (3)(c), (3)(d).

     BSD includes a section on its website setting out BSD's complaint procedure. The

procedure encourages "all parties to attempt to [first] resolve complaints informally at the lowest

level possible, beginning with the teacher or employee." https://www.beaverton.k12.or.us/about-

us/policies-and-regulations/section-kl-district-community-relations/kl-public-complaints (last

checked May 19, 2025). "If this direct communication does not resolve the concern, the

complainant is encouraged to speak with the principal of the school or the staff member's

supervisor/department administrator, which may include an in-person conference." *Id.* "If the

complainant is not able to resolve the concern through this informal problem-solving process,

then the complainant would initiate a formal complaint in writing." *Id.* When "a student,

parent/guardian or community member wishes to file a formal complaint it should be filed in

accordance with the process in KL-AR." *Id.* "Formal complaints may be appealed to the Board

following the exhaustion of all other levels outlined in KL-AR." *Id.* "[I]f a complaint is not resolved through the District's complaint process, a complainant may appeal the district's final decision to the Deputy Superintendent of Public Instruction (ODE) if the complaint alleges a violation of . . . ORS 659.850." *Id.*

The formal complaint process set out in KL-AR "begins with Level 1. If the concern is not resolved at this level, the complainant may proceed to Level 2, which is the final level of appeal within the district" except for "some final decisions of the district" including complaints for violation of § 659.850, which may be further appealed "to the Board or directly to the Oregon Department of Education." https://www.beaverton.k12.or.us/about-us/policies-and-regulations/section-kl-district-community-relations/kl-public-complaints (last checked May 19, 2025). Level 1 requires the filing of a complaint form found on the BSD website, but notes "[i]n the absence of a completed complaint form, complainants may use any form of *written* communication which identifies the matter as a formal complaint." *Id.* (emphasis added). "All formal complaints will receive a final written response and decision within 10 working days of acknowledgement of the complaint, unless impracticable or the parties agree otherwise." *Id.* "If the issue is not resolved to the complainant's or respondent's satisfaction at Level 1," a "request for [a Level 2] review must be submitted in writing within 10 calendar days of the complainant receiving the Level 1 written decision and should be submitted to the district Compliance Officer. It may be submitted in letter or email form." *Id.* The review request "should state the nature of the complaint, the remedy being requested, and describe why the complainant believes the Level 1 decision is incorrect or insufficient. It should also include a copy of the written complaint and response at Level 1." *Id.* "The Superintendent or designee will issue a written decision via letter or email within 10 working days of receipt of the appeal to Level 2, unless

impracticable or the parties agree otherwise." *Id.* Although generally "the Superintendent or designee's decision at Level 2 constitutes the final decision of the district," as noted, with complaint of a violation of § 659.850, appeal of the final decision of the district may be made to the Board or to the Oregon Department of Education. *Id.*

 The implementing regulations and the BSD rules make clear that the meeting requested by Plaintiff and held with the General Counsel for Defendant BSD, Defendant Freeman, and Plaintiff's counsel does not satisfy the criteria for a grievance consistent with the provisions of ORS 659.860(3). The meeting is the type of informal complaint resolution procedure that precedes the formal complaint process. As noted, Level 1 of the formal complaint process requires the filing of a complaint form found on the BSD website or submission of "any form of written communication which identifies the matter as a formal complaint." A meeting is not a "form of written communication."

 In addition, to the extent that Plaintiffs intended to assert that Parker's October 20, 2023 letter satisfies the requirements of Level 1, the letter does not state that it is a formal complaint. Even if the letter satisfies Level 1, Plaintiffs do not allege facts from which this Court can conclude that Plaintiffs completed the complaint process through at least Level 2 before filing this action.

 The Court, therefore, concludes Plaintiffs have not alleged facts to establish that they filed a grievance before filing their claim for violation for § 659.850 as required by § 659.860(3). Accordingly, the Court grants Defendants' Motion to Dismiss this claim.

 "A district court's discretion in deciding motions for leave to amend is 'particularly broad' when the court has already granted leave to amend." *Reynolds v. City of Eugene*, 599 F. App'x 667, 668–69 (9th Cir. 2015)(quoting *Chodos v. West Publ'g Co., Inc.*, 292 F.3d 992, 1003

(9th Cir. 2002)). The Court already provided Plaintiffs with an opportunity to amend their Complaint to add allegations to support this claim and Plaintiffs failed to do so, nor do they state what additional facts they would plead to cure the deficiency. The Court, therefore, declines to grant Plaintiffs leave to amend this claim a second time and dismisses this claim with prejudice. *See Another Planet Ent., LLC v. Vigilant Ins. Co*., No. 21-16093, 2024 WL 3510295, at *1 (9th Cir. July 22, 2024)("Another Planet fails to state what additional facts it would plead to cure this deficiency in its allegations. Accordingly, amendment would be futile.")(citing *Kendall v. Visa USA, Inc*., 518 F.3d 1042, 1052 (9th Cir. 2008)).

## II.    Violation of Or. Rev. Stat. § 659.852

In their original Complaint, Plaintiffs' alleged that K.B. was "subjected to threats, harassment or other adverse action that resulted in . . . K.B., being substantially disadvantaged in his academic and/or extracurricular activities because [he] reported, in good faith, information that [he] believed was a violation of state or federal law, rule or regulation" and Defendants "by virtue of the conduct complained of herein engaged in unlawful retaliation against [K.B.] in violation of ORS 659.852." Compl. ¶¶ 32-33.

Or. Rev. Stat. § 659.852(2) provides: "A student of an education program may not be subjected to retaliation by an education program for the reason that the student has in good faith reported information that the student believes is evidence of a violation of a state or federal law, rule or regulation." Section 659.852(1)(b) defines retaliation as "suspension, expulsion, disenrollment, grade reduction, denial of academic or employment opportunities, exclusion from academic or extracurricular activities, denial of access to transcripts, threats, harassment or other adverse action that substantially disadvantages a student in academic, employment or extracurricular activities."

Defendants moved to dismiss this claim on the basis that Plaintiffs did not allege retaliation after K.B.'s interaction with Williams. Plaintiffs alleged K.B. was subjected to harassment, threats, and discrimination while he was in Williams's office, but there were no allegations in the Complaint that Defendants took any actions defined as retaliation after the incident or after Barrios raised concerns about the incident. The Court found that Plaintiffs did not make any allegations of retaliatory actions taken by Defendants against K.B. after Barrios "called the school and also went to the school" to complain about Williams's behavior. Plaintiffs, therefore, did not state a claim for violation of Or. Rev. Stat. § 659.852. Accordingly, the Court granted Defendants' Motion to Dismiss this claim but granted Plaintiffs leave to amend to the extent that they could allege retaliatory actions as defined in Or. Rev. Stat. § 659.852(1)(b) taken by Defendants after Barrios "called the school and also went to the school" to complain about Williams's actions.

Plaintiffs do not make any new or additional allegations to support their claim of violation of § 659.852. The Court, therefore, concludes Plaintiffs have not stated a claim for violation of § 659.852 and grants Defendants' Motion to Dismiss that claim without leave to amend. *Another Planet*, 2024 WL 3510295, at *1.

### III.    IIED

In their original Complaint Plaintiffs alleged that "the conduct complained of herein by defendant Williams, Freeman and BSD engaged in intentional and/or reckless misconduct, [*sic*] that was extreme and outrageous . . ., that was the proximate cause and result of the severe emotional mental anguish and/or distress that [Barrios and K.B.] sustained." Compl. ¶ 34. Plaintiffs alleged K.B. and Barrios "have suffered under the intentionally and/or recklessly imposed misconduct that the defendants put in motion and both [Barrios and K.B.] . . . continue

to suffer the ill-effects of said recklessly and/or intentionally imposed misconduct that defendants engaged or otherwise participated in the implementation of." *Id.* ¶ 35.

Defendants moved to dismiss Plaintiffs' IIED claim as to Barrios on the basis that Plaintiffs did not allege facts sufficient to state a claim.

To state a claim for IIED, a plaintiff must allege the defendants intended to inflict severe emotional distress, the defendants' acts were the cause of the plaintiff's severe emotional distress, and the defendants' acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. *Cider Riot, LLC v. Patriot Prayer USA, LLC*, 330 Or. App. 354, 382 (2024)(quotation omitted). "Whether conduct constitutes an extraordinary transgression of the bounds of socially tolerable conduct is a question of law." *Harris v. Pameco Corp.*, 170 Or. App. 164, 171 (2000). *See also House v. Hicks*, 218 Or. App. 348, 358 (2008)(The "trial court plays a gatekeeper role in evaluating the viability of an IIED claim by assessing the allegedly tortious conduct to determine whether it goes beyond the farthest reaches of socially tolerable behavior and creates a jury question on liability."). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *House,* 218 Or. App. at 358 (quotation omitted). "Conduct that is rude, boorish, tyrannical, churlish and mean" does not support liability for IIED. *Schoen v. Freightliner LLC*, 224 Or. App. 613, 627 (2008)(quotation omitted). "[I]t is the defendant's specific acts, rather than their motives, that must be outrageous." *Cisneros v. City of Klamath Falls*, 604 F. Supp. 3d 1114, 1128 (D. Or. 2022)(citing *Madani v. Kendall Ford, Inc.,* 312 Or. 198, 204 (1991), *abrogated on other grounds by McGanty v. Staudenraus,* 321 Or. 532, 543 (1995)).

The Court noted in its February 21, 2025, Opinion and Order that the only actions that Plaintiffs alleged that Defendants engaged in as to Barrios were (1) answering her phone call to the office, (2) "essentially barr[ing] her from the school" on the grounds that Freeman was concerned for Williams's safety, and (3) sending a letter to Plaintiffs' counsel in response to his tort claims notice. This Court explained that Oregon courts have found similar actions are not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." For example, in *House*, the court found that the plaintiff failed to state a claim for IIED because the "university's conduct in excluding plaintiff from the campus [for 18 months] and enforcing that ban was neither outrageous nor extreme" when the university's department of public safety had received reports that the plaintiff was making unwanted contact with a university employee and causing her to feel concerned for her safety. 218 Or. App. at 351-356, 366. The Court, therefore, concluded Plaintiffs had not alleged facts sufficient to state a claim for IIED as to Barrio, granted Defendants' Motion to Dismiss this claim as to Barrios, and granted Plaintiffs leave to amend the Complaint to add facts to support Barrios's claim.

Plaintiffs, however, do not add any factual allegations in their Amended Complaint to support their claim for IIED as to Barrios. The Court, therefore, concludes Plaintiffs have not alleged facts sufficient to state a claim for IIED as to Barrios. Accordingly, the Court grants Defendants' Motion to Dismiss this claim as to Barrios and, for the reasons noted above, declines to grant Plaintiffs leave to amend this claim.

IV.    **Section 1983**

In their § 1983 claim Plaintiffs allege Defendants "deprived [Barrios] . . . of rights, privileges and immunities that are protected under the Constitution and law of the United States of America" when "Plaintiff attempted to make immediate personal contact with defendants and

was inappropriately denied access to the public-school premises and falsely labeled to be a threat which defendants knew, or in the exercise of reasonable diligence should have known, was not true." FAC ¶ 25. Defendants move to dismiss Plaintiffs' § 1983 claim as to Barrios because Plaintiffs do not identify what constitutional right Barrios had and was deprived of by Defendants.

"To state a claim under § 1983, a plaintiff must allege (1) the 'violation of a right secured by the Constitution and laws of the United States' and (2) that 'the alleged deprivation was committed by a person acting under color of state law.'" *Pruitt v. Bobbala*, No. 23-15732, 2024 WL 3631154, at *2 (9th Cir. Aug. 2, 2024)(quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). "Section 1983 . . . is 'not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.'" *Williams v. City of Los Angeles*, No. 2:23-CV-06881-MRA-E, 2024 WL 5185386, at *3 (C.D. Cal. Sept. 30, 2024)(quoting *Graham v. Connor*, 490 U.S. 386, 393-94 (1989)). "Thus, the first step in pleading a § 1983 claim is to identify the specific constitutional right infringed, and step two is to identify a proper defendant responsible for the alleged constitutional violation." *Barber v. Bremerton Police Dep't*, No. 3:24-CV-05618-BHS-DWC, 2024 WL 4028288, at *2 (W.D. Wash. Sept. 3, 2024)(citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994)).

In Plaintiffs' Response to Defendants' Motion to Dismiss Plaintiffs' original Complaint, Plaintiffs cited no authority for their assertion in their Complaint that "barr[ing] Barrios from the school" due to concerns for Williams' safety and/or receiving a letter from Defendant Freeman alleged a violation of Barrios's constitutional rights.[1] The Court, therefore, dismissed Plaintiffs'

---

[1] Plaintiffs also cited *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), in their Response, but Plaintiffs do not appear to assert a *Monell* claim in their FAC.

§ 1983 claim as to Barrios. Plaintiffs again fail to allege or identify what constitutional right they assert Barrios was deprived of when Defendants denied her immediate access to the school on the basis of their belief that Barrios was a threat to Williams and the Court declines to speculate. *See Pitts v. Harrington*, No. CV 21-00249 DKW-KJM, 2021 WL 2417720, at *2 (D. Haw. June 14, 2021)(quoting *Eblacas v. Agbulos*, No. 18-00376 DKW-RLP, 2018 WL 5621954, at *2 (D. Haw. Oct. 30, 2018)("[T]he court . . . will not speculate about [the plaintiff's] claims, and has no obligation to act as counsel . . . to . . . litigants.").

The Court finds Plaintiffs have not alleged a claim for violation of § 1983 as to Barrios. The Court, therefore, grants Defendants' Motion to Dismiss this claim as to Barrios without leave to amend.

## V.    Negligence

In their negligence claim Plaintiffs allege "Defendants had a duty to provide a safe, secure environment for providing educational services to" K.B. and they "breached their duty by allowing . . . Freeman allowing . . . Williams to impermissibly subject" K.B. "to discriminatory actions based on his race and Mexican origin." FAC ¶¶ 37-38. Barrios and K.B. "sustained damage resulting directly from the impermissible misconduct of the defendants" and  "[t]hat . . . impermissible misconduct of defendants Freeman and Williams is the proximate cause of the damages sustained by" Barrios and K.B. FAC ¶¶ 39-40.

Defendants moved to dismiss Plaintiffs' negligence claim as to Barrios as alleged in Plaintiffs' original Complaint because plaintiffs may not recover emotional distress damages caused by negligence absent physical injury except in limited circumstances and Plaintiffs here had alleged neither that Barrios suffered any physical injury nor any of the circumstances in

which Oregon courts have concluded plaintiffs may bring a negligence claim absent physical

injury.

      As the Court explained in its February 21, 2025, Opinion and Order, to state a claim for

negligence a plaintiff must allege

> facts from which a factfinder could determine (1) that defendant's conduct
> caused a foreseeable risk of harm, (2) that the risk is to an interest of a
> kind that the law protects against negligent invasion, (3) that defendant's
> conduct was unreasonable in light of the risk, (4) that the conduct was a
> cause of plaintiff's harm, and (5) that plaintiff was within the class of
> persons and plaintiff's injury was within the general type of potential
> incidents and injuries that made defendant's conduct negligent.

*Moody v. Or. Cmty. Credit Union*, 371 Or. 772, 784 (2023)(quotation omitted). Under Oregon

law, however, individuals "[g]enerally . . . do not have a legally protected interest in being free

from emotional distress." *Id.*

> [T]o date, [the Oregon Supreme Court] has permitted common-law tort
> claims for emotional distress damages only in the following three
> circumstances: (1) when the defendant also physically injures the plaintiff;
> (2) when the defendant intentionally causes the emotional distress; or (3)
> when the defendant negligently causes foreseeable, serious emotional
> distress *and also* infringes some other legally protected interest.

*Id.* (quotation omitted)(emphasis added). In the third category, which is at issue here, the Court

has held that "the injury's foreseeability, standing alone, is insufficient to establish the

defendant's liability[;] there must also be another 'legal source' of liability for the plaintiff to

recover emotional distress damages." *Id.* (quoting *Philibert v. Kluser*, 360 Or. 698, 703 (2016)).

In *Philibert* the court evaluated "whether two brothers who had watched their third brother die in

a collision had stated a negligence claim for the emotional distress damages that they had

alleged." *Id.* at 785. The Court concluded that "bystander emotional injury claims" may be

permitted only when "(1) the bystander perceives the event contemporaneously and (2) is a close

family member of the person suffering the bodily injury." *Id.* at 787 (citing *Philibert*, 360 Or. at

711). In their Response to Defendants' Motion to Dismiss Plaintiffs' original Complaint Plaintiffs cited *Fazzolari v. Portland School District* No. 1J, 303 Or 1 (1987), but that case discussed the "special duty arising from the relationship between educators and children entrusted to their care apart from any general responsibility not unreasonably to expose people to a foreseeable risk of harm." *Id.* at 19. The *Fazzolari c*ourt did not develop or suggest any special duty or relationship between educators and parents. Plaintiffs also cited *Curtis v. MRI Imaging Services II*, 327 Or 9 (1998). The holding of *Curtis* was not broad, however. Rather it involved a "claim . . . that a medical practitioner breached a professional duty to guard against a specified medical harm." *Id.* at 15. The Court concluded under those circumstances, "the fact that that harm is psychological rather than physical is not a bar to liability" for negligent infliction of emotional distress. The Court explained, however, that its "holding should not be read to mean that medical professionals operate under a general duty to avoid any emotional harm that foreseeably might result from their conduct," rather when "the standard of care in a particular medical profession recognizes the possibility of adverse psychological reactions or consequences as a medical concern and dictates that certain precautions be taken to avoid or minimize it, the law will not insulate persons in that profession from liability if they fail in those duties." *Id.*

This Court concluded that Plaintiffs did not allege facts sufficient for Barrios to recover as a bystander because she did not perceive the events with K.B. contemporaneously. Plaintiffs also did not identify a special relationship or duty between educators and parents or any authority that gives parents the right to recover for only emotional injury when their child has been discriminated against in school. The Court, therefore, concluded that Plaintiffs did not state a claim for negligence as to Barrios and granted Defendants' Motion to Dismiss this claim as to Barrios with leave to amend.

Plaintiffs allegations in their negligence claim in the Amended Complaint are exactly the same as those alleged in Plaintiffs' initial Complaint. The Court, therefore, concludes Plaintiffs have not stated a claim for negligence as to Barrios. Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiffs' negligence claim as to Barrios without leave to amend.

## CONCLUSION

The Court GRANTS Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, ECF 16. This matter will proceed only as to K.B.'s claims for (1) violation of § 1983, (2) IIED, (3) negligence, and (4) false imprisonment.

IT IS SO ORDERED.


DATED:_____May 19, 2025_____.



_____
MARCO A. HERNÁNDEZ
United States Senior District Judge